CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
AUG 07 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| ADAN APARICIO-MARQUEZ, | ) | CASE NO. 5:10CR00031 |
| | ) | (CASE NO. 5:12CV80463) |
| Petitioner, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Respondent. | ) | U.S. MAGISTRATE JUDGE |

On June 26, 2012, Adan Aparicio-Marquez ("petitioner") filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("petition"). On November 5, 2012, the case was referred to the undersigned under the authority of 28 U.S.C. § 636(b)(1)(B), to conduct an evidentiary hearing and render to the presiding District Judge a report setting forth findings, conclusions, and recommendations for the disposition of petitioner's claims. For the reasons that follow, the undersigned will RECOMMEND that the presiding District Judge enter an Order DENYING the petition and DISMISSING this action from the docket of the court.

## FACTUAL BACKGROUND

On June 6, 2011, petitioner plead guilty pursuant to a plea agreement to four counts of a six count Superseding Indictment (Dkt. No. 32) arising out of his involvement in the distribution of cocaine base ("crack" cocaine). *United States of America v. Adan Aparicio-Marquez*, No. 5:10CR00031, Dkt. Nos. 57, 60. Count One, alleging petitioner's involvement in a conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), all in violation of 21 U.S.C. § 846, and Count Six, charging possession of cocaine with intent to distribute on August 24, 2010 in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), were dismissed on motion of the government. (Dkt. Nos. 32; 60, at 3.) Petitioner pled guilty to

Counts Two, Three, Four, and Five, which charged petitioner with distributing cocaine on or about June 10, 2010, June 25, 2010, June 30, 2010, and July 29, 2010, respectively, in violation of 21 U.S.C. §§ 841(a) and 841 (b)(1)(C). (Dkt. No. 32; 57; 60, at 1-2, 12.) In his plea agreement, petitioner expressly waived his right to appeal or collaterally attack his conviction, except for collateral attacks based on an issue that cannot be waived or based on ineffective assistance of counsel. (Dkt. No. 60, at 8.)

On October 21, 2011, petitioner was sentenced to 82 months' imprisonment. Petitioner did not appeal his conviction or sentence. (Dkt. No. 68.) On June 26, 2012, he filed this action under 28 U.S.C. § 2255. (Dkt. No. 83.) Aparicio-Marquez's petition seeks habeas corpus relief on the following grounds: (1) ineffective assistance of counsel due to his attorney's failure to file an appeal; (2) ineffective assistance of counsel for not seeking a minor role reduction under Section 3B1.2 of the sentencing guidelines; and (3) ineffective assistance of counsel for failing to request an offense level reduction under a Fast Track program. *Id.* at 4-8. On September 26, 2012, the Government filed a response and requested an evidentiary hearing. (Dkt. No. 91.)

In a Memorandum Opinion entered on November 5, 2012, the presiding District Judge addressed petitioner's claim that trial counsel had been ineffective in failing to file a notice of appeal and noted that he would refer the case to the undersigned with direction to conduct an evidentiary hearing and to submit a report setting forth appropriate findings, conclusions, and a recommended disposition of the "claim that counsel was ineffective in failing to file a notice of appeal." (Dkt. No. 95). The Order that followed referred the case to the undersigned to conduct evidentiary proceedings on that claim, but then further directed the undersigned to submit a report setting forth appropriate findings, conclusions of law, and a recommended disposition *of all of the defendant's claims....*" (Dkt. No. 96 (*emphasis added*).)

2

Thereupon, the undersigned appointed Frederick T. Heblich, Esq., Federal Public Defender, to represent petitioner, and the case was set for an evidentiary hearing. (Dkt. Nos. 97, 98.) Thereafter, a series of events occurred necessitating a number of continuances. (Dkt. Nos. 99, 100, 101.) On June 10, 2013, an evidentiary hearing was held before the undersigned in which petitioner participated by live video with his counsel, a Spanish interpreter, and counsel for the government appearing in the courtroom.

**EVIDENCE**

**Petitioner**

In his *pro se* type-written petition, petitioner alleged that counsel at trial and sentencing was ineffective in failing to file a direct appeal. He alleged that "petitioner asked his counsel to file an appeal on petititoner [sic] behalf, counsel in this case fail to even as much as to file a notice of appeal after petitioner had told his counsel to do so." (Dkt. No. 83, at 4.) He also asserted, "counsel owes his client a duty of loyalty, a duty to avoid conflicts of interest, a duty to consult with the defendant on important decisions, and a duty to bring such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*

At the hearing before the undersigned, petitioner testified that he was represented at trial and at sentencing by appointed counsel, William Warner Eldridge, IV, Esq. He stated that immediately after sentencing, Eldridge met with him in the holding cell where they discussed, through an interpreter, whether petitioner wished to appeal. Petitioner stated that he instructed Eldridge to file an appeal. Though he did not relate to the undersigned that he explained to Eldridge the reason at that time, he testified that it was because the drug weight for sentencing purposes was higher than the 3.5 grams to which he thought he had agreed in his plea agreement.

3

Petitioner testified that Eldridge responded with a recommendation not to appeal because "we had already lost once and we were going to lose again." Petitioner then related that he informed Eldridge that "it didn't matter, I wanted to appeal." According to petitioner, the conversation ended with Eldridge's informing petitioner that "if I changed my mind, I should call him," adding that, "[s]ince I didn't change my mind, I didn't call." Petitioner understood this statement to mean Eldridge would file the notice of appeal unless petitioner called and "cancelled" it.[1]

On cross examination, petitioner conceded that he had made no efforts to communicate with Eldridge, by letter or otherwise, after sentencing, though he has communicated with a number of other individuals since then. He also admitted that, during the plea hearing, he informed the presiding District Judge that he was "very happy" with his counsel. He also admitted that he understood the terms of the plea agreement, and that the terms "were correct."

Petitioner further testified on cross examination that the only reasons Eldridge did not recommend an appeal were that an appeal was "inconvenient," and petitioner would lose again, though counsel did not explain why he would lose again. Petitioner related that neither he nor his family ever attempted to contact Eldridge in writing or speak with him following sentencing, though he did write to others after sentencing.

Finally, petitioner responded to questions posed by the undersigned relating to his petition and its allegations. He stated that he could not read or write in English, and that another inmate who had experience helping people file these petitions had written it for him. The petitioner stated that he had given the other inmate a copy of his plea agreement, and that

---

[1] Petitioner also was examined about the negotiations leading to his plea agreement, his desire to have certain witnesses testify on his behalf, and the conversations he had with Eldridge about these matters. The undersigned finds these irrelevant to the issue of the effectiveness of counsel relating to petitioner's appeal rights.

4

petitioner was aware that if he filed an appeal or collateral attack, the government could recharge him on all counts. According to petitioner, it was his decision to file the instant motion, and he was willing to take any risks associated with it.

**William Warner Eldridge**

Eldridge testified that he has been in private practice since October of 2004, and that he was appointed to represent petitioner in the underlying case. Eldridge stated that the petitioner had difficulty speaking in English, and that an interpreter was present throughout the course of his representation whenever he needed to communicate with petitioner. Eldridge testified that the petitioner pled guilty to four counts of possession with intent to distribute and had received a sentence of eighty-two months. Eldridge related that he had a discussion with petitioner directly following the sentencing in which an interpreter participated. He further related that he explained the sentence, the time limits to appeal the sentence, and the appellate rights petitioner had waived by entering into the agreement.

Eldridge informed the court that, during their post-sentencing conversation, they discussed an initial, but rejected, plea offer made by the government that would have led to a lighter sentence but would have required petitioner to plead to the more serious charge set forth in Count One of the indictment. Eldridge testified that petitioner then stated that he would have to live with the decision he had made (not to accept the initial offer) and thanked Eldridge for his service.

Eldridge further related that he had successfully opposed on behalf of his client several of the government's arguments for sentencing enhancements and informed petitioner that he would appeal if instructed to do so. He also apprised petitioner that petitioner should call him if he

5

wished to file an appeal. However, Eldridge did not receive any communications from petitioner or his family following that conversation.

Eldridge testified that he made notes of the post-sentencing conversations with petitioner on October 21, 2011, "right after sentencing." These notes were transcribed into a "NOTE TO FILE" which was offered and received without objection as Government Exhibit #1. (Dkt. No. 104-1.) Eldridge explained that he had begun the hand-written notes during the meeting, which he finished hand-writing in his office later that day. Eldridge then related that it was customary for him to type up his hand-written notes the next day.

Exhibit 1 reveals that he had opposed the drug weight and the government's efforts for a sentencing enhancement, however, prevailing only on his objections to a sentencing enhancement. (Dkt. No. 104-1, at 1.) Exhibit #1 reflects that "[petitioner] clearly told me that he did not want an appeal," in response to which petitioner was directed to notify Eldridge if he wanted to file a notice of appeal. The exhibit also reflects that Eldridge had verified with petitioner the contact information supplied to petitioner and his family on a prior occasion, and he confirmed that petitioner understood he was to contact counsel should he wish to appeal, though petitioner indicated that he "was not going to appeal." *Id.*

**Other Claims**

Petitioner presented no evidence on the other claims he asserted, namely that counsel failed to seek a reduction in his sentence based on his minor role in the case, and that counsel failed to seek an offense level reduction under the Fast Track program.

**APPLICABLE LAW**

In order to establish ineffective assistance of counsel, petitioner must demonstrate by the preponderance of the evidence: 1) that counsel's performance was objectively unreasonable

6

when measured against prevailing professional norms, and 2) that the petitioner was prejudiced by the deficient performance in that there is a reasonable probability that the outcome would have been different if not for counsel's deficiency. *See Strickland v. Washington*, 466 U.S. 668, 692-694 (1984); *Frazer v. South Carolina*, 430 F.3d 696, 703 (4th Cir. 2005). There is a strong presumption that a counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Moreover, counsel's representation need not have been free of error to be found effective. *See Wyatt v. U.S.*, 591 F.2d 260, 267 (4th Cir. 1979). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

An attorney who disregards a client's specific instruction to file a timely notice of appeal acts in a professionally unreasonable manner. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A presumption of prejudice applies when an attorney's deficient performance deprives the defendant of an appeal, such as when his failure to file a timely notice of appeal results in a "forfeiture" of the appellate proceeding. *Id.* at 483. In demonstrating prejudice, a defendant need not show that his hypothetical appeal might have had merit. *Id.* at 486. An attorney is required to file a notice of appeal when the client unequivocally instructs him to do so, even if filing an appeal would be contrary to the plea agreement in the case and/or harmful to the client's interests. *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).

**FINDINGS AND CONCLUSIONS**

There is no dispute in the evidence that, directly after the sentencing, petitioner and Eldridge met and discussed whether to appeal. However, the testimony of petitioner, on the one hand, is in sharp conflict with that of counsel, on the other hand, as it relates to the substance of the conversation on the critical question here. Petitioner testified that he instructed Eldridge to

7

file an appeal despite understanding the consequences that could bring to him under the plea agreement. He also characterized Eldridge's response to the request as "inconvenient" because they had lost once and would lose again. On the other hand, Eldridge testified that petitioner had decided not to appeal and to "live with" his decision rejecting a prior plea agreement and accepting the one actually signed and filed with the court. Eldridge's testimony was consistent with the NOTE TO FILE (Exhibit #1) which reflected that petitioner did not want to appeal, but that, if he changed his mind, he was to notify counsel.

While both petitioner's and Eldridge's versions of the post-sentencing conversation incorporate the notion that petitioner was to contact Eldridge if he was to "change his mind," they diverge on what the court should find "change of mind" meant. Petitioner asserted it meant deciding not to appeal, and Eldridge was clear that it meant petitioner's deciding he wanted to appeal.

The undersigned finds that the testimony offered by Eldridge, when corroborated by his post-conversation notes, the plea agreement itself, and the transcripts of the plea and sentencing proceedings before the Magistrate Judge and presiding District Judge, respectively, where an interpreter was present, is more credible than petitioner's essentially bald assertions to the contrary. The undersigned finds by a preponderance of the evidence that: (1) petitioner had rejected an offer of a plea to Count One (the larger conspiracy), which carried a lighter recommended sentence, in exchange for pleading to the other counts carrying a potentially greater overall sentence; and (2) that he was prepared to take the consequences of that decision. The undersigned further finds that Eldridge's advice concerning an appeal was both reasonable and sound, and that Eldridge and petitioner parted with an understanding that no appeal would be filed unless petitioner timely communicated a contrary determination to Eldridge. In other

words, whether an appeal was to be filed was entirely in the petitioner's hands, and he simply allowed the opportunity, whether wise or not, to slip through.

Finally, the undersigned turns to the argument advanced by petitioner's counsel in these proceedings that the failure to file a notice of appeal was the result of a misunderstanding. The undersigned finds no ambiguity in how things were left between petitioner and Eldridge. Either they were left with Eldridge filing an appeal unless notified to the contrary, or they were left that no appeal would be filed absent a timely change of mind. Objectively, no reasonably competent counsel in Eldridge's position would have left the post-sentencing conversation with an understanding that he was to file a notice of appeal unless his client later contacted him to cancel it. The undersigned finds by a preponderance of the evidence that the only reasonable explanation for the absence of a notice of appeal in this case is that Eldridge ended the conversation with a clear understanding petitioner would not appeal unless petitioner changed his mind and timely communicated that to counsel.

**Other Claims**

Petitioner did not produce evidence relating to his allegations of Eldridge's deficiencies on the sentencing issues. As the government pointed out in its brief, petitioner pled guilty to four counts of distribution which foreclosed eligibility for a minor role reduction under Section 3B1.2 of the sentencing guidelines. (Dkt. No. 91, at 5.) Furthermore, the Fast Track program does not exist in the Western District of Virginia. Therefore, counsel was not in a position to request a Fast Track reduction. (*Id.* at 6.) Because petitioner was not eligible for either of the sentencing reductions, counsel could not have been ineffective in failing to seek them.

**Recommendation**

Accordingly, the undersigned RECOMMENDS that petitioner's claim of ineffective assistance of counsel under 28 U.S.C. § 2255 for failure to file a direct appeal and on the other grounds set forth in his petition, be DENIED, and that the action be DISMISSED from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding Chief United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
U.S. Magistrate Judge

8-07-2013
Date