CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 16 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Action No. 5:10CR00031 |
| ) | Civil Action No. 5:12CV80463 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| ADAN APARICIO-MARQUEZ, ) | |
| ) | By: Hon. Glen E. Conrad |
| Defendant. ) | Chief United States District Judge |

Defendant Adan Aparicio-Marquez, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The case is presently before the court for review of the defendant's motion, the report and recommendation of United States Magistrate Judge B. Waugh Crigler, and the defendant's objection to the report. For the reasons that follow, the court will overrule the defendant's objection, adopt the magistrate judge's report and recommendation, and deny the defendant's § 2255 motion.

## Background

On October 7, 2010, Aparicio-Marquez was named in a one-count indictment returned by a grand jury in the Western District of Virginia. The indictment charged that the defendant possessed with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). On February 3, 2011, a grand jury in the Western District of Virginia returned a six-count superseding indictment against Aparicio-Marquez, charging him with one count of conspiring to distribute 500 grams or more of cocaine; four counts of cocaine distribution; and one count of possessing cocaine with the intent to distribute, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b) and 846. William W. Eldridge, Esq. was appointed to represent Aparicio-Marquez during the criminal proceedings.

On June 6, 2011, Aparicio-Marquez entered a plea of guilty to the four distribution counts in the superseding indictment, pursuant to a written plea agreement. By signing the agreement, the defendant certified that he was pleading guilty because he was, in fact, guilty of the offenses charged and not because of any threats or promises; that he had discussed the plea agreement and all other matters pertaining to the indictment with his attorney; and that he was fully satisfied with his attorney and the attorney's advice. (Plea Ag. at 2, 10–11.) Under the terms of the plea agreement, Aparicio-Marquez agreed that each count carried a maximum statutory penalty of imprisonment for a term of twenty (20) years. (Id. at 1–2.) He also agreed to accept responsibility for his conduct, for which the government promised to recommend a two-level offense level reduction. (Id. at 4.) Further, he acknowledged that the government "retain[ed] all of its rights pursuant to Fed. R. Crim. P. 35(b), U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e)," but that it was "under no obligation to make a motion for the reduction of [his] sentence." (Id.) Additionally, Aparicio-Marquez agreed to waive his right of direct appeal under 18 U.S.C. § 3742(a) and his "right of appeal as to any and all other issues in this matter." (Id. at 8.) He expressly agreed to "not file a notice of appeal." (Id.)

This case was referred to Magistrate Judge James G. Welsh for the purpose of conducting a plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. During the hearing, the magistrate judge established that Aparicio-Marquez possessed the competence and capacity to make an informed plea.[1] (Guilty Plea Report & Recommendation at 3, 11.) The magistrate judge also established that the defendant understood the nature of the charges to

---

[1] The defendant was provided with an interpreter at his Rule 11 hearing, sentencing hearing, and evidentiary hearing on the instant motion.

which he was pleading guilty, the consequences of his guilty plea, and the purpose of the Rule 11 proceeding. (Id. at 3–4, 11–12.)

The magistrate judge instructed the Assistant United States Attorney ("AUSA") to outline the principle provisions of the plea agreement. In response, the AUSA reviewed several sections of the plea agreement, including the section summarizing the potential penalties that Aparicio-Marquez faced upon conviction. (Plea Hr'g Tr. at 8.)[2] The AUSA also noted that the defendant acknowledged that the court would not be bound by any recommendations or stipulations in the plea agreement and may sentence him up to the statutory maximum. (Id. at 9.) Additionally, the AUSA pointed out that the defendant "waive[d] his right to appeal." (Id. at 10.) By signing the plea agreement, the defendant affirmed that he had "discussed the terms of this plea agreement and all matters pertaining to the charges against him with his attorney and that he [was] fully satisfied with his attorney and his attorney's advice." (Id.) Upon being asked if the AUSA's summary of the plea agreement was consistent with his own understanding of the agreement, Aparicio-Marquez responded in the affirmative. (Id. at 11.)

The magistrate judge then inquired as to whether Aparicio-Marquez was voluntarily pleading guilty. In response to questions from the court, the defendant confirmed that no one had made any promises or assurances to him other than those set forth in the plea agreement, and that no one had tried to force him in any way to plead guilty or sign the agreement. (Id. at 12.) The magistrate judge discussed the plea agreement's waiver of appellate rights, specifically pointing out that pursuant to the plea agreement, the defendant was "giving up or waiving [his]

---

[2] The court has reviewed the unedited transcript from the plea hearing held before Magistrate Judge James G. Welsh on June 6, 2011.

3

rights to appeal [his] conviction or [his] sentence" and his "right to challenge [his] conviction or sentence in a later court proceeding." (Id. at 17.) When asked if he understood that he had agreed to waive most of his appellate remedies, Aparicio-Marquez responded in the affirmative. (Id.)

The magistrate judge reviewed the many constitutional and civil rights that Aparicio-Marquez would waive if he entered a plea of guilty. (Id. at 14, 17.) The judge reminded the defendant that each of the four offenses to which he was pleading guilty carried a sentence of up to twenty years imprisonment. (Id. at 13). He also notified the defendant that he would be subject to deportation as a result of pleading guilty. (Id.) The judge inquired as to whether the defendant had any questions regarding the charges against him, the possible sentencing range, or the likelihood of deportation. (Id. at 14.) The defendant had no questions. (Id.) When asked whether he did, in fact, distribute cocaine as charged, the defendant responded in the affirmative. (Id. at 18–19.)

The court then called upon the government to present a statement of facts that would support Aparicio-Marquez's plea of guilty. (Id. at 19.) Proceeding by proffer, the AUSA summarized the government's evidence as follows:

> From April of 2009 through July 29, 2010, the defendant, Adan Aparicio-Marquez, distributed cocaine to a confidential informant more than one hundred times. During each transaction, Aparicio-Marquez distributed to the confidential informant between one gram and 3.5 grams of cocaine. Aparicio-Marquez also instructed other individuals to assist him in distributing cocaine to the CI on his behalf during this same time period.
>
> Now, the same CI performed four controlled cocaine purchases from the defendant, Aparicio-Marquez. First, on June 10, 2010, Aparicio-Marquez distributed approximately 3.5 grams of cocaine to the CI in Winchester, Virginia. Second, on June 20, 2010, Aparicio-Marquez distributed approximately 3.5 grams

4

> of cocaine to the CI in Winchester, Virginia. Third, on June 25, 2010, Aparicio-Marquez distributed approximately 3.5 grams of cocaine to the CI in Winchester, Virginia. Fourth, on July 29, 2010, Aparicio-Marquez distribute[d] approximately seven grams of cocaine to the CI in Winchester, Virginia.
> 
> ...
> 
> Finally, your honor, on August 24, 2010, law enforcement officers arrested Aparicio-Marquez and [his co-defendant] in Winchester, Virginia. At the time of the arrest, [his co-defendant] was driving Aparicio-Marquez to deliver approximately nine ounces of cocaine . . . . Officers seized the nine ounces of cocaine from the vehicle . . . .

(Id. at 21–22.) The defendant agreed that this is the evidence the government would have presented against him at trial. (Id. at 23.)

At the conclusion of the hearing, the magistrate judge asked whether Aparicio-Marquez was satisfied with his attorney's representation, and whether he had anything to say about counsel's services. (Id. at 26.) The defendant indicated that he was satisfied with the services provided by his attorney, and said, "Thank you very much. He's always been by my side supporting me, advising me." (Id.) The magistrate judge asked Aparicio-Marquez whether he had any questions for the court. (Id. at 27.) The defendant affirmed that he did not. (Id.) In a report filed on June 17, 2011, Judge Welsh recommended that the court accept the defendant's pleas of guilty to all four felony offenses. (Guilty Plea Report & Recommendation at 13.)

On July 6, 2011, this court adopted the magistrate judge's report and recommendation in whole, and Aparicio-Marquez was adjudged guilty of all four offenses. The court deferred acceptance of the plea agreement, pending completion of a presentence report. Prior to the sentencing hearing, a probation officer prepared a presentence investigation report. The probation officer determined that Aparicio-Marquez should be held accountable for at least 2 but less than 3.5 kilograms of cocaine and, thus, subject to a base offense level of 28. Additionally,

5

the probation officer determined that Aparicio-Marquez was subject to a two-level enhancement for managing and leading criminal activity and a two-level decrease for accepting responsibility, resulting in a total offense level of 28. When combined with a criminal history category of I, Aparicio-Marquez's total offense level gave rise to a range of imprisonment of 78 to 97 months under the advisory United States Sentencing Guidelines ("U.S.S.G.").

The defendant raised two objections to the presentence investigation report, to which the probation officer responded prior to submitting the report to the court. In his first objection, the defendant denied that drugs seized from a vehicle on August 24, 2010 were his or that he intended to distribute them. Further, the defendant objected to the quantity of drugs for which he should be held accountable on the basis that he was misidentified as "Flaco," the individual who a defendant in a related case named as his sole supplier. In response, the probation officer amended the report to reflect that while the defendant did not deny knowledge of the drugs being in the vehicle, he never claimed them, nor admitted that that he intended to distribute them. However, upon reviewing the evidence, the probation officer concluded that the defendant was "Flaco," and made no additional amendments to the report based on the defendant's first objection. In his second objection, Aparicio-Marquez argued against the inclusion of a criminal history point for an offense that occurred prior to his eighteenth birthday. The probation officer agreed with the defendant and removed the point, resulting in the criminal history category of I listed in the final presentence report.

The court conducted Aparicio-Marquez's sentencing hearing on October 21, 2011. At the start of the hearing, the defendant confirmed that he had received adequate opportunity to consider the presentence investigation report and the objections filed by counsel on his behalf.

(Sentencing Hr'g Tr. at 3–4.) His counsel, William Eldridge, renewed his first objection to the presentence report with regard to the defendant being identified as "Flaco," and the drug weight for which the defendant should ultimately be held accountable. Upon receipt and full consideration of the evidence, including live testimony from two federal agents, the court overruled the defendant's objection. Specifically, the court found, by a preponderance of the evidence, that Aparicio-Marquez was the "Flaco" referred to during the course of the investigation. (Id. at 73.) Further, the court found, by a preponderance of the evidence, that the defendant should be held responsible for more than two kilograms of cocaine. (Id. at 74.)

The court found that Aparicio-Marquez's total offense level of 28 and criminal history category of I gave rise to a recommended term of imprisonment of 78 to 97 months. (Id. at 75.) The court gave both sides the opportunity to offer any argument as to an appropriate disposition. The government recommended a sentence at the top end of the advisory guidelines range. (Id. at 77.) Defense counsel, again noting his objection to the court's findings, recommended a sentence at the low end of the advisory guidelines range. (Id.) After considering the factors set forth in 18 U.S.C. § 3553(a), the court imposed a sentence within the advisory guidelines range of 82 months. At the conclusion of the sentencing hearing, the court informed the defendant as follows:

> Mr. Aparicio, I tell you, you have waived your right to appeal your sentence by virtue of your plea agreement. That waiver is binding unless the sentence exceeds the statutory maximum or is based on some constitutionally impermissible factor. If you undertake to appeal despite your waiver, you may lose the benefits of the plea agreement.
>
> To the extent a right of appeal exist[s], I tell you a person unable to pay the cost of an appeal may apply for leave to appeal without pre-payment of that cost. . . . Any notice of appeal must be filed within 14 [days] of entry of judgment of

7

conviction or within 14 days of a notice of appeal filed by the United States. If
requested, the clerk will prepare and file a notice of appeal on your behalf.

(Id. at 92–93.) The judgment was entered on October 25, 2011. Aparicio-Marquez did not file a direct appeal of his conviction or sentence.

On June 28, 2012, Aparicio-Marquez filed the instant motion for relief under 28 U.S.C. § 2255. The motion alleges ineffective assistance of counsel on the following grounds: (1) failure to file an appeal; (2) failure to seek a minor-role reduction under U.S.S.G. § 3B1.2; and (3) failure to move for an offense level reduction under U.S.S.G. § 5K3.1, Early Disposition Programs ("Fast Track"). On September 26, 2012, the government submitted a response brief, arguing that the asserted claims are without merit. The defendant was notified on September 27, 2012 that he had twenty-one (21) days to submit any additional evidence; he did not file a response.

Upon reviewing the defendant's motion and the government's response, the court concluded that Aparicio-Marquez's claim that his attorney failed to file a notice of appeal could not be resolved on the existing record. Accordingly, the court ordered an evidentiary hearing on the issue of whether Aparicio-Marquez requested his attorney to file a notice of appeal. (Mem. Op., Nov. 6, 2012, Docket No. 95; Order Referring Case, Nov. 6, 2012, Docket No. 96.) The matter was referred to Magistrate Judge B. Waugh Crigler, pursuant to 28 U.S.C. § 636(b)(1)(B), for a hearing and recommended disposition of the claim. (Id.)

Judge Crigler conducted an evidentiary hearing on June 10, 2013, during which Aparicio-Marquez and his trial counsel, William W. Eldridge, were called as witnesses. Thereafter, Judge Crigler issued a report and recommendation, which includes the following findings:

(1) It is undisputed that directly after sentencing, Aparicio-Marquez and Eldridge met and discussed whether to appeal;

(2) [T]he testimony offered by Eldridge, when corroborated by his post-conversation notes, the plea agreement itself, and the transcripts of the plea and sentencing proceedings . . . where an interpreter was present, is more credible than [Aparicio-Marquez's] essentially bald assertions to the contrary;

(3) Eldridge's advice concerning an appeal was both reasonable and sound;

(4) Eldridge and [Aparicio-Marquez] parted with an understanding that no appeal would be filed unless [Aparicio-Marquez] timely communicated a contrary determination to Eldridge;

(5) No reasonably competent counsel in Eldridge's position would have left the post-sentencing conversation with an understanding that he was to file a notice of appeal unless his client later contacted him to cancel it;

(6) [T]he only reasonable explanation for the absence of a notice of appeal in this case is that Eldridge ended the conversation with a clear understanding [that Aparicio-Marquez] would not appeal unless [he] changed his mind and timely communicated that to counsel.

(Evidentiary Hr'g Report & Recommendation at 8–9.) Based on these findings, Judge Crigler recommended that the court deny Aparicio-Marquez's claim of ineffective assistance for failure to file a direct appeal. (Id. at 10.)

Aparicio-Marquez subsequently filed an objection to the magistrate judge's report. In his objection, the defendant disagrees with the magistrate judge's factual finding that Aparicio-Marquez did not request counsel to file a notice of appeal. The defendant argues that "when a

9

lawyer disregards specific instructions from a defendant to file a notice of appeal (as in this case)[,] . . . he should be entitle[d] to a new appeal without showing that his appeal could likely have merit." (Def.'s Objection, Aug. 23, 2013, Docket No. 108.)

## Standard of Review

The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The magistrate judge's report has no presumptive weight, and the responsibility to make a final determination remains with this court. Id. at 270–71. This court is charged with making a de novo determination of those portions of the report and recommendation to which specific objections are made. 28 U.S.C. § 636(b)(1). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

## Discussion

I. Failure to File an Appeal

The court will first address Aparicio-Marquez's claim that his counsel, William Eldridge, was ineffective in failing to file a direct appeal. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Id. at 687. To prevail on a claim of ineffective assistance, a defendant must show: (1) that his "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense." Id. With respect to the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. With respect to the second, the defendant must show that "there is a

10

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court recognized two scenarios in which a defendant may raise a claim of ineffective assistance for failure to file a notice of appeal. The first occurs when an attorney "disregards specific instructions from the defendant to file a notice of appeal." Id. at 477. Where such a claim is established, the attorney's assistance is per se ineffective. Id. at 483. The second scenario occurs when counsel fails to consult with a defendant about an appeal and there was a "constitutionally-imposed duty" to do so. Id. at 480. Both parties agree that Eldridge, with the assistance of an interpreter, met with Aparicio-Marquez immediately after his sentencing to discuss whether Aparicio-Marquez wished to appeal. (Evidentiary Hr'g Tr. 8–9, 23–24.) Therefore, the second Flores-Ortega scenario does not exist in this case.

Having reviewed the record in this case, the court adopts the magistrate judge's finding that Aparicio-Marquez did not specifically instruct his counsel to file an appeal and, thus, that the first scenario of Flores-Ortega does not exist in this case. By the express terms of his plea agreement, the defendant waived his right to appeal his sentence and "any and all other issues in this matter," and "explicitly and irrevocably directed [his] attorney not to file a notice of appeal." (Plea Ag. at 8.) At his change of plea hearing, Aparicio-Marquez acknowledged, under oath, that he understood the terms of his plea agreement, including the provision in which he agreed "to waive his right to appeal." (Plea Hr'g Tr. at 10–11.) During the sentencing hearing, this court reminded the defendant that he had "waived [his] right to appeal [his] sentence by virtue of [his] plea agreement" and further instructed that the "waiver is binding unless the sentence exceeds

11

the statutory maximum or is based on some constitutionally impermissible factor." (Sentencing Hr'g Tr. at 92.)

During the evidentiary hearing on the instant motion,[3] Eldridge unequivocally testified that the defendant did not instruct him to file an appeal at their post-sentencing meeting. (Id. at 26.) ("He told me in clear terms that he didn't at that point in our conversation [] want to appeal.) ("[H]e again told me that he did not want to appeal. And that was our conversation we had.") At the end of the meeting, Eldridge told Aparicio-Marquez that "if he wanted to appeal and he changed his mind, to let [Eldridge] know." (Id. at 34.)

Supporting his oral testimony, Eldridge submitted a copy of his note-to-file summarizing his post-sentencing conversation with the defendant. The note, dated October 21, 2011, reads in pertinent part:

> I met with Mr. Marquez right after the sentencing hearing with a translator.
> 
> . . .
> 
> When I spoke with Mr. Marquez, I explained to him that he has 14 days to appeal. I also explained to him the impact of his appeal per the terms of the plea agreement and the potential consequences if he appealed. Mr. Marquez clearly told me that he did not want to appeal.
> 
> . . .
> 
> He did thank me several times for my assistance with his case. I told him to notify me well before the end of the 14 days if he wanted me to file a notice of appeal.
> 
> . . .
> 
> Mr. Marquez said that he understood and that he was not going to appeal.

(Evidentiary Hr'g, Gov't Exhibit #1, Docket No. 104.)

---

[3] The court has reviewed the unedited real-time transcript from the evidentiary hearing held before Magistrate Judge B. Waugh Crigler on June 10, 2013.

12

Eldrige affirmed under oath that the typewritten note to file—transcribed from his own handwritten notes—accurately reflected what he wrote during the post-sentencing meeting. (Evidentiary Hr'g Tr. at 33.)

Eldridge further testified that after the post-sentencing meeting on October 21, 2011, he received no further communication from Aparicio-Marquez, or any of his family members or friends, requesting that he file a notice of appeal. (Id. at 28.) Additionally, Eldridge testified that, during the post-sentencing meeting, Aparicio-Marquez never questioned "the judge's admonition to him that he waived his right to appeal," "the judge's instructions to him that if he did appeal, he would lose the benefit of his plea bargain," or "the judge's statement to him that even if [Eldridge] did not appeal, he could directly file an appeal with the assistance of the clerk." (Id. at 30.) Eldridge explained that, at the time of sentencing, he asked the court about whether he could file an appeal if requested to do so because he had "participated in the plea agreement by signing it." (Id. at 30–31.) However, he maintained that at the end of their post-sentencing conversation, Aparicio-Marquez did not want to appeal. (Id. at 34).

Aparicio-Marquez acknowledged that he and Eldridge spoke about whether to file an appeal during a post-sentencing meeting. (Id. at 8.) However—contrary to the terms of his plea agreement, his representations at the plea hearing, and Eldridge's testimony and note-to-file—Aparicio-Marquez testified that he told Eldridge at that meeting that he wanted and "need[ed] to appeal." (Id. at 9.) According to Aparicio-Marquez, Eldridge advised him that he did not recommend appealing because "it was not convenient to appeal," and the defendant "would lose again." (Id. at 14.) Despite his counsel's advice, he testified, Aparicio-Marquez told Eldridge

13

that "it didn't matter, [he] still wanted to appeal." (Id. at 15.) Eldridge then told the defendant that "if [the defendant] change[d] [his] mind, that [he] should call him." (Id. at 9.) The defendant explained that since he never changed his mind about wanting to appeal, he never called Eldridge. (Id. at 10.) He expected that, unless he called Eldridge to "cancel the appeal," he would go ahead and file a notice of appeal. (Id.)

Weighing Aparicio-Marquez's assertion that he requested Eldridge to file a notice of appeal against the express terms of the defendant's plea agreement, the representations made by the defendant under oath at his plea hearing, the transcript from the sentencing hearing, and Eldridge's testimony and note-to-file presented at the evidentiary hearing, the court finds that Aparicio-Marquez did not ask his counsel to file an appeal. Thus, counsel's failure to file an appeal was not per se ineffective.

In his sole objection to the report and recommendation, Aparicio-Marquez asserts again that counsel "fail[ed] to file a requested notice of appeal." (Def.'s Objection 2, Aug. 23, 2013, Docket No. 108.) He argues that counsel's testimony at the evidentiary hearing was unclear, and he points out that he did not sign counsel's note to file. (Id.) He concludes that "beca[us]e a fact issue exist[s] as to whether or not [he] directed his trial counsel to file an appeal," he is "entitled to [] a new appeal [] without showing that his appeal would have merit[]." (Id. at 3.)

For the reasons explained in more detail above, this argument is belied by the record. First, by the express terms of his plea agreement with the government, the defendant waived his right to appeal his sentence. (Plea Ag. at 8.) Further, the defendant acknowledged at his plea hearing that he was "waiving [his] rights to appeal [his] conviction or [his] sentence" and "giving up [his] right to challenge [his] conviction or sentence in a later court proceeding." (Plea Hr'g

14

Tr. at 17.) Again, at the defendant's sentencing hearing, the court reminded the defendant that he had "waived [his] right to appeal [his] sentence" and informed him that the "waiver is binding unless the sentence exceeds the statutory maximum or is based on some constitutionally impermissible factor." (Sentencing Hr'g Tr. at 92.) Finally, Eldridge testified clearly and unequivocally at the evidentiary hearing that Aparicio-Marquez told him in their post-sentencing meeting that he did not want to appeal. This testimony is corroborated by a detailed note-to-file, written during or shortly after the post-sentencing meeting between Eldridge and Aparicio-Marquez. On this record, the court is convinced that Aparicio-Marquez's assertion that he requested a notice of appeal is contrary to the weight of the evidence and must be rejected.

For the reasons outlined above, the court will adopt the magistrate judge's report and recommendation as to the defendant's claim of failure to appeal and overrule the defendant's objection. Having concluded that counsel's performance was not deficient under Strickland and Flores-Ortega, the court need not consider the prejudice prong of the Strickland test.

II.     Remaining Claims of Ineffective Assistance

Aparicio-Marquez's § 2255 motion includes two additional claims of ineffective assistance. In his first remaining claim, Aparicio-Marquez alleges that his counsel was ineffective because he did not seek a mitigating role reduction under U.S.S.G. § 3B1.2. Under § 3B1.2, a "minimal participant" is entitled to a four-level offense level decrease and a "minor participant" is entitled to a two-level offense level decrease. The reduction applies only to defendants who are "substantially less culpable than the average participant." (U.S.S.G. § 3B1.2, Comment 3(A).) "The critical inquiry is thus not just whether the defendant has done fewer 'bad acts' than his co-defendants, but whether the defendant's conduct is material or essential to

committing the offense." United States v. Pratt, 239 F.3d 640, 646 (4th Cir. 2001). Here, the defendant pled guilty to four counts of distributing cocaine. His conduct—exchanging money for cocaine and instructing others to assist in distributing cocaine—was clearly "material or essential to committing the offense" of cocaine distribution. (Plea Hr'g Tr. at 21–22.) Therefore, the defendant was ineligible for an offense level reduction under § 3B1.2, and counsel was not ineffective when he decided not to seek a mitigating role reduction.

In his second remaining claim, Aparicio-Marquez alleges that his counsel was ineffective because he failed to request an offense level reduction under § 5K3.1, Early Disposition Programs ("Fast Track"). Because the Western District of Virginia does not offer a Fast Track program, the defendant's claim is without merit.

### Conclusion

For the reasons stated, the court will adopt the magistrate judge's report and recommendation, overrule the defendant's objection to the report, and deny the defendant's motion to vacate, set aside, or correct his sentence. Additionally, because Aparicio-Marquez has failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

ENTER: This 16th day of December, 2013.

_____
Chief United States District Judge